UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-24428

D.S.,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, D.S. (hereinafter "D.S."), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. D.S. seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. D.S. is *sui juris* and is a resident and citizen of the state of California.

6. CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

7. CARNIVAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8. CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a. Operated, conducted, engaged in, or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**FACTUAL ALLEGATIONS**

10. The "subject areas" refer to the locations where D.S. was served alcoholic beverages, as well as the subject stairs where D.S. fell, and the immediately surrounding area, on the subject ship.

11. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *Radiance*.

12. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject areas involved in D.S.'s incident.

13.   D.S.'s incident began on or about January 5, 2024, and continued through January 6, 2024, while she was a fare paying passenger on CARNIVAL'S vessel, *Radiance*.

14.   On or about January 5, 2024, between approximately 2:58 p.m. and 11:37 p.m., CARNIVAL crewmembers served D.S. approximately fourteen alcoholic beverages within a span of approximately eight hours and thirty-nine minutes. Due to her inebriated state that was caused by this over-service of alcohol, between approximately January 5, 2024, at 11:45 p.m. and January 6, 2024, at 12:20 a.m., D.S. suffered a severe fall.

15.   Moreover, CARNIVAL's crewmembers intentionally misrepresented to D.S. that she could be seen on CCTV for the entire duration of time between discussed above, and as a result, D.S. declined to have a rape kit administered. In fact, there are a number of gaps of time not shown on CCTV, including a large gap of time between approximately January 5, 2024, at 11:45 p.m. and January 6, 2024, at 12:20 a.m., and as a result, D.S. has been unable to know whether she suffered a sexual assault during the unaccounted-for period of time, causing her pain, suffering, extreme mental anguish, and other injuries.

16.   As a result, D.S. sustained severe injuries, including, but not limited to, a concussion, headaches, a possible traumatic brain injury, back injuries, tailbone injuries, bruising, and other injuries.

17.   CARNIVAL's crewmembers onboard *Radiance*, including the staff that over-served alcohol to D.S. and medical staff were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

18.   CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

19.   CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

20.   CARNIVAL's crewmembers were employees and agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

**COUNT I**
**OVER-SERVICE OF ALCOHOL BY CARNIVAL'S CREW, STAFF, EMPLOYEES,**
**AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

21.   D.S. hereby adopts and re-alleges each and every allegation in paragraphs 1-14 and 16-20, as if set forth herein.

22.   CARNIVAL's crewmembers owed a duty to exercise reasonable care under the circumstances for the safety of CARNIVAL's passengers.

23.   This duty included, but was not limited to, the responsibility of a marine carrier of passengers under applicable U.S. maritime common law to supervise and/or assist passengers aboard the vessel who CARNIVAL knew, or should have known, were engaging, or were likely to engage, in behavior potentially dangerous to themselves or others aboard the vessel.

24.   A primary reason why U.S. maritime common law places these duties upon marine carriers of passengers, rather than leaving it up to the passengers to supervise themselves in what (at least to the passengers) are the unfamiliar surroundings of a cruise ship, is to prevent marine accidents and causalities from occurring aboard vessels navigating on the high seas. Such incidents, unlike shoreside accidents, have the potential and likelihood to disrupt international commerce by diverting vessels from their itineraries for the purpose of obtaining advanced medical treatment and/or to conduct rescue operations and/or to call other vessels and/or shoreside agencies like the U.S. Coast Guard to come to render assistance.

25.   CARNIVAL knew, or should have known, that the risk and actual occurrences of

falls were magnified and/or influenced by factors such as the design and installation of the subject areas and the vicinity, the unfamiliarity of passengers with its cruise ships, the passenger's lack of knowledge of the prior, severe incidents and/or injuries which CARNIVAL knew to be associated with the presence and consumption of alcohol aboard vessels which reduced passengers' judgment, and the general party atmosphere fostered aboard the vessel by CARNIVAL, which deliberately markets all you can drink beverage packages.

26. CARNIVAL deliberately makes alcohol available to passengers and crew aboard its vessels, despite knowing that alcohol is banned for safety reasons aboard vessels operated by the U.S. Government and military and aboard U.S. flagged merchant ships.

27. The sale of alcohol, in fact, represents one of the top sources of on-board revenue to CARNIVAL, grossing over millions per year, upon information and belief.

28. To maximize this revenue, CARNIVAL deliberately designs its vessels such as the Carnival Sunrise to ensure that there are alcohol serving stations in every nook and cranny of the ship.

29. Neither CARNIVAL nor the law of the relevant flag nation(s) impose a "legal limit" or any other legal consequences for alcohol consumption or intoxication aboard CARNIVAL's ships. Neither does CARNIVAL employ any systematic method to keep track of how much alcohol a particular passenger has consumed over time, other than perhaps looking for visual signs of intoxication, which of course means that the individual is already drunk.

30. CARNIVAL, quite to the contrary, deliberately does as much as possible to encourage and facilitate alcohol consumption aboard its vessels.

31. CARNIVAL fully understands and expects that alcohol consumption by passengers will result in the diminution of their inhibitions and good judgment, which CARNIVAL, upon

information and belief, expects will foster the general party atmosphere that CARNIVAL desires, and promotes aboard its vessels, so as to enhance some of its other revenue producing shipboard activities such as gambling and the purchase of more alcohol.

32.   CARNIVAL thus knew that the presence of intoxicated passengers aboard its vessels, including in the subject areas and the vicinity, was common.

33.   As a result of CARNIVAL's scienter as described, CARNIVAL knew or should have known of the risk of the subject incident, which was foreseeable.

34.   CARNIVAL's above-described knowledge and information was not possessed by the D.S., at all relevant times.

35.   CARNIVAL served its "cheers" drink package to D.S., and its crewmembers served approximately fourteen alcoholic beverages in the hours leading up to her fall.

36.   As a result of consuming these alcoholic beverages D.S. became intoxicated, and D.S.'s state of intoxication was and/or should have been readily observable to any reasonable person, including CARNIVAL's crewmembers.

37.   Alternatively, if D.S. did not become intoxicated, D.S. became impaired and/or her ability to perceive her surroundings were otherwise adversely affected, and this impaired/diminished condition was and/or should have been readily observable to any reasonable person, including CARNIVAL's crewmembers.

38.   D.S. was continuously and intentionally served alcohol by CARNIVAL's crewmembers numerous times, well past the point where a person would become visually intoxicated.

39.   CARNIVAL is vicariously liable for the acts of its crewmembers who continued to serve D.S. alcoholic beverages past the point where she became visually intoxicated.

40. The crewmembers that over-served alcohol to D.S., as discussed previously, were agents of CARNIVAL for the following reasons:

a. All of CARNIVAL's crewmembers, including the subject crewmembers, were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b. These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c. These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d. CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

41. CARNIVAL is vicariously liable for its crewmembers' over-service of alcohol to D.S..

42. These crewmembers' breaches were the cause in-fact of D.S.'s great bodily harm in that, but for CARNIVAL's crewmembers' breach, D.S.'s incident and injuries would not have occurred.

43. These crewmembers' breaches proximately caused D.S. great bodily harm in that the incident that occurred was a foreseeable result of the crewmember's breach.

44. As a result of these crewmembers' over-service of alcohol, D.S. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, punitive damages, and loss of the value of D.S.'s vacation, cruise, and transportation costs.

45.   The losses are permanent and/or continuing in nature.

46.   D.S. has suffered these losses in the past and will continue to suffer such loses in the future.

47.   The conduct of CARNIVAL's crewmembers referenced above constituted an intentional tort. Accordingly, an award of punitive damages to D.S. is warranted in this case, in addition to the compensatory damages referenced above and below.

**WHEREFORE**, Plaintiff, D.S., demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that D.S. will suffer and incur in the future, as a result of D.S.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, lost wages, lost earning capacity, for all court costs, pre- and post-judgment interest, punitive damages, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## <u>INTENTIONAL MISREPRESENTATION BY CARNIVAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY</u>

48.   D.S. hereby adopts and re-alleges each and every allegation in paragraphs 1-13 and 15-20, as if set forth herein.

49.   As the owner of a ship in navigable waters, CARNIVAL owed to all who are on board the Ship the duty of exercising reasonable care under the circumstances of matters related to the subject incident. This duty applies to the representations that CARNIVAL's crewmembers made to D.S. that she could be seen on CCTV for the entire duration of time discussed previously.

50.   In fact, CARNIVAL's crewmembers knew that there were a number of gaps of time

not shown on CCTV, including a large gap of time between approximately January 5, 2024, at 11:45 p.m. and January 6, 2024, at 12:20 a.m., and they failed to disclose these gaps to D.S. with the intention to deceive her into believing that nothing harmful happened to her, and to induce her to decline to have a rape kit administered and to decline to pursue litigation and other types of complaints against CARNIVAL.

51. As a direct and proximate cause of the reliance upon the intentional misrepresentations by CARNIVAL's crewmembers, D.S. declined to have a rape kit administered.

52. As a result, D.S. has been unable to know whether she suffered a sexual assault during the unaccounted-for period, causing her pain, suffering, extreme mental anguish, and other injuries.

53. The crewmembers that made these misrepresentations to D.S., as discussed previously, were agents of CARNIVAL for the following reasons:

a. All of CARNIVAL's crewmembers, including the subject crewmembers, were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

b. These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

c. These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d. CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

54. CARNIVAL is vicariously liable for its crewmembers' misrepresentations

55.   These crewmembers' breaches were the cause in-fact of D.S.'s great bodily harm in that, but for CARNIVAL's crewmembers' breach, D.S.'s incident and injuries would not have occurred.

56.   These crewmembers' breaches proximately caused D.S. great harm in that the injuries that occurred was a foreseeable result of the crewmembers' breach.

57.   As a result of these crewmembers' misrepresentations, D.S. has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, punitive damages, and loss of the value of D.S.'s vacation, cruise, and transportation costs.

58.   The losses are permanent and/or continuing in nature.

59.   D.S. has suffered these losses in the past and will continue to suffer such loses in the future.

60.   The conduct of CARNIVAL's crewmembers referenced above constituted an intentional tort. Accordingly, an award of punitive damages to D.S. is warranted in this case, in addition to the compensatory damages referenced above and below.

**WHEREFORE**, Plaintiff, D.S., demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that D.S. will suffer and incur in the future, as a result of D.S.'s bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, lost wages, lost earning capacity, for all court costs, pre- and

post-judgment interest, punitive damages, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, D.S., demands trial by jury on all issues so triable.

**Dated:** November 11, 2024.

Respectfully submitted,

*/s/ Spencer M. Aronfeld, Esq.*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for D.S.***
